U.S. District Court
Eastern District of Wisconsin

Maniya Allen, et al.,

        Plaintiffs,
  v.

American Cyanamid, et al.,

        Defendants;

Case No.: 11CV0055

DIJONAE TRAMMELL,
        Plaintiff,
  v.

AMERICAN CYANAMID CO., et al.,
        Defendants.

Case No. 14CV1423

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO EXCLUDE EXPERT OPINION
TESTIMONY OF LEANNE PANIZICH, PhD**

**INTRODUCTION**

    The plaintiffs hereby move to exclude the opinions of Defendants' proposed expert witness, Leanne Panizich, PhD, a vocational expert, pursuant to Federal Rule of Evidence 702, 401, and 403. Dr. Panizich has repeatedly testified that she is not an expert in lead poisoning or lead poisoning's effects (if any) on vocational earnings. Instead, her opinions are that each Plaintiff has achieved exactly what she would expect they would achieve vocationally given their socio-economic and racial backgrounds. This testimony is not relevant, as the plaintiffs have not disclosed nor are they asking for specific damages for loss of earnings. Instead, the anticipated testimony is a highly prejudicial back-door approach to circumventing Rule 403 attempting to

1

somehow make relevant Defendants' version of the histories of the children, their parents, their siblings, and their families.

I.  **LEGAL STANDARD**

Plaintiffs move pursuant to Federal Rule of Evidence ("Rule") 702 and the standards set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) and as adopted by the Seventh Circuit. *See Gopalratnam v. Hewlett-Packard Co.*, C. A. No. 13-cv-618-PP, 2017 WL 1067768 at \*3-\*4 (E.D. Wis. March 21, 2017)(holding that Rule 702 provides the standard for expert testimony and that while *Daubert* interprets an earlier version of the Rule, it remains "the gold standard for evaluating the reliability of expert testimony and is essentially codified in the current version of Rule 702.")(internal citations and quotations omitted). Expert testimony is admitted if the expert is qualified to proffer it, *see* Rule 702, and if it "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597. Excluding Dr. Panizich's testimony is well within the authority of this Court as the "gatekeeper," tasked with determining whether or not proffered expert testimony is admissible. *See Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Rule 702 is to be applied flexibly, but also so that unreliable or irrelevant testimony is not admitted. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894-95 (7th Cir. 2010). Proponents of expert testimony in the Seventh Circuit bear the burden of proving that *Daubert's* requirements have been met by a preponderance of the evidence. *See Fail-Safe, LLC v. A.O. Smith Corp.*, 744 F. Supp. 2d, 870, 886 (E.D. Wis. 2010).

In Wisconsin, courts must first determine whether expert testimony is necessary at all. *See Gopalratnam*, 2017 WL 1067768 at \*4 (and collecting cases). Expert testimony will not be required "as long as the case involves issues within the general common knowledge of a lay jury."

*Id*. (citing to *Replinski v. Fobe's Roofing, Inc.*, 531 N.W. 2d 597, 601 (Wis. 1995)). The Seventh Circuit has specifically held that products liability cases are subject to the rule. *Id*. (citing to and quoting *Smoot v. Mazda Motors of Am.*, 469 F.3d 675, 680 (7th Cir. 2006)).

## II. LEGAL ARGUMENT

### A. DR. PANIZICH IS NOT QUALIFIED TO PROFFER EXPERT OPINIONS CONCERNING THE CAUSE OF ANY OF THE PLAINTIFFS' PSYCHOLOGICAL OR BEHAVIORAL ISSUES AND THEIR CURRENT VOCATIONAL STATUS AND EARNINGS.

Pursuant to the Rules, to proffer expert opinion, "[a] witness [must qualify] as an expert by knowledge, skill, experience, training, or education." *See* Rule 702. Nothing in Dr. Panizich's educational or professional backgrounds qualify her to proffer the causation opinions she is called to make here, specifically whether each Plaintiff's lead poisoning was a cause of his or her current vocational status. (See Exs. A, B, C, D, Dr. Panizich's Reports for Plaintiffs Cannon, McHenry, Thompson, and Trammell.) Dr. Panizich does not routinely treat or work with lead poisoned children. Instead, her non-litigation work is primarily in the context of worker's compensation. (Composite Excerpts, Dr. Panizich's Depo. 11:1-4-16, attached as Exhibit E). Dr. Panizich is likewise not qualified by virtue of education, training, or experience to opine on the *effect* of lead poisoning on an individual's vocational status. Dr. Panizich has testified repeatedly that she is not an expert in lead, and in response to any questions regarding lead's effect on vocational status she stated that would be outsider her expertise. (*See, e.g., id*. at 77:15-20) ("**I am not an expert in lead**, but addressing your question to that para -- that sentence statement, my answer would be yes. **But again, I am not an expert in lead and you are moving outside of my area of expertise. I'm not particularly comfortable**.") (emphasis added).

Thus, Dr. Panizich entirely lacks the requisite qualifications to proffer the causation opinions she is called to make here. Dr. Panizich's opinions that lead was not a cause of each

3

child's current vocational status, as set forth in her reports, was contradicted by her deposition testimony where she stated that lead poisoning did not cause each Plaintiff's vocational status because each had already turned out exactly as she expected they would based on their background. (Ex. E, 105:23-25; 106:1-4) ("I think the correct assessment is that I see no evidence that the exposure to lead resulted in any type of vocational loss, because her current functioning is basically consistent with what we would expect based on the predictions established within the PEEDS framework."). Accordingly, Dr. Panizich's opinions do not qualify under Rule 702 and *Daubert*, and, must be excluded. *See* Rule 702, *see Daubert*, 509 U.S. at 597.

> **B.    DR. PANIZICH'S OPINIONS ARE IRRELEVANT AND, THEREFORE, INADMISSIBLE BECAUSE LOSS OF EARNINGS ARE NOT AT ISSUE IN THIS CASE.**

Expert opinion will be admitted only if it "will help the trier of fact to understand the evidence or to determine a fact in issue;" *see* Rule 702, that is, it must be relevant. *See Daubert*, 509 U.S. at 597. Dr. Panizich's sole, identical opinion for each Plaintiff is that their lead poisoning as a child has not affected their vocational earnings. (*See, e.g.*, Ex. E at 105:23-25, 106:1-4). This testimony is not relevant here, where Plaintiffs have not sought nor introduced evidence of loss of earnings. Instead, this testimony is an attempt to backdoor irrelevant bad family history testimony that this Court has routinely excluded. As her opinions will not be of any use, whatsoever, to the jury they must be excluded. *See* Rule 702(a); *see also Daubert*, 509 U.S. at 597.

As an initial matter, Plaintiffs are seeking damages on behalf of the specific brain injury that is a result of being lead poisoned as toddlers. This neuropsychological injury results in the loss of at least 10 IQ points, and does so in a specific way: discrepancies between areas of processing and a loss of executive function. Plaintiffs are **not** seeking damages based upon "bad" behaviors, unrelated medical conditions such as ADHD, or loss of vocational earnings.

4

Defendants' continued attempts to enter such evidence is contrary to this Court's prior orders and irrelevant to the issues that the jury must decide in this case. As such, the only purpose of this evidence would be to attempt to convince the jury that these children – by virtue of their socio-economic and family circumstances – were never going to amount to much anyway and, therefore, their lead poisoning as infants is irrelevant.

In Wave 1 cases, this Court routinely excluded such irrelevant testimony as more prejudicial than probative given the fact that the jury was not being asked to decide these damages. As this Court noted in chambers during the Wave 1 trial:

> They're talking about brain injury. So, I mean, I think that you're -- basically this effort to show that these kids are screw-ups in some way or another, either because they're truants or because they get into fights, I mean, unless that's raised by plaintiffs somehow that they're the opposite of that and you want to discredit that, in which case you would have a right to, but otherwise it's prejudicial and should not come in … If it's the question of probative versus prejudice and it's a question of what plaintiffs put in, if plaintiffs don't put in any evidence in about his school attendance or performance or that sort of thing, then I think that it's extremely prejudicial and not probative for defendants to counteract that evidence with evidence that he was maybe not a screw-up but a truant or a partial truant. So that's my ruling.

(*Burton* Trial Tr. at 2367: 7-14; 2370: 7-14) (May 13, 2019) (Ex. F).

> I do think that its's really – even if there is some probative value, which doesn't seem to be the case, I think it's outweighed by the danger of unfair prejudice and, really – so that's – same ruling on that.

(*Burton* Trial Tr. at 2842:4-7) (May 14, 2019) (Ex. G).

> School performance is not the issue. That's not what they are claiming. I'm going to—I'm just going to state something. I'm going to exclude evidence of crimes or behavioral problems under Rule 403, as any slight probative value it might have is substantially outweighed by the danger of unfair prejudice. Plaintiffs have not claimed that lead poisoning caused them to be oppositional, combative, or otherwise prone to misbehavior, nor have they put in evidence that they behaved well in school, such that this kind of evidence could be used to attack the credibility of plaintiffs' evidence. Therefore, evidence that, for instance, plaintiff possessed or used drugs, got in fights, joined gangs, committed robberies does not appear to be relevant of the claims being raised. It is, on the other hand, highly prejudicial to

inform the jury that the plaintiffs may have committed crimes or otherwise engaged in misbehavior of that sort.

(*Burton* Trial Tr. at p. 3269: 4-23) (May 15, 2019) (Ex. H).

Here, Dr. Panizich relies heavily on accounts of bad behavior (including unsubstantiated accounts, rumor, and innuendo), unfortunate circumstances in each child's upbringing, and each Plaintiffs' socio-economic class and racial ethnicity to determine that they have each achieved the same vocational earnings that would be expected of someone of their characteristics and background. (Ex. A, B, C, D, Dr. Panizich's Reports). In other words, Dr. Panizich paints each of these people as caricatures, defined and necessarily limited by the difficult circumstances in their lives with no regard for the children as individuals. She presumes without anything more than anecdotal insight that all who come from challenging circumstances – by virtue of their family circumstances, their socio-economic status, or racial ethnicity – cannot perform better than those circumstances. These types of opinions perpetuate unacceptable stereotypes and are a cover for the Defendants' true message to the jury – it doesn't matter if poor, minority children are lead poisoned because, in the end, they were not going to amount to much anyway. Such a prejudicial argument must be excluded, consistent with the Federal Rules of Evidence and this Court's prior orders.

### III. RULE 702 PRECLUDES ADMISSIBILITY OF EXPERT TESTIMONY THAT IS NOT RELIABLE OR THE PRODUCT OF A RELIABLY APPLIED SCIENTIFIC PROCESS

Even if it were relevant and at issue for the jury – which it is not – Dr. Panizich has not applied a reliable methodology to reach her conclusions. Loss of earning capacity in the usual sense involves comparing an injured person's earning capacity both before and after an insult. Here, where that information does not exist because the children were lead poisoned and suffered

6

a brain insult as babies, Dr. Panizich has sought to rely on the Peeds-Rapel framework to determine if there has been a loss of earnings.

In 2005 Peeds-Rapel published an article codifying a methodology of collecting information on an injured child and comparing it to the history of their parents, siblings and family as to how well they did medically, educationally and occupationally. (Attached hereto as Exhibit I, Peeds-Rapel). From this Peeds-Rapel suggests synthesizing the information to project how the injured child would do earnings-wise over a lifetime. Peeds-Rapel suggests – but does not establish – that the same approach might apply to children injured as toddlers or infants. Since 2005, however, there have been no peer-reviewed articles/texts/tests establishing whether the Peeds-Rapel methodology offers any accurate or predictive information for a child injured as a toddler. (Sub. A infra.)

Hence, Dr. Panizich's testimony that these plaintiffs have not lost nor gained one penny of income over their lifetimes as a result of suffering lead poisoning as infants is untethered to science. Instead of having no effect on a child, lead poisoning changes the physical make-up and capacity of a child's brain. Lead is a neurotoxin that produces permanent neuropsychological and developmental injuries to children (Attached as Exhibit J, National Toxicology Program, "NTP Monograph on Health Effects of Low-Level Lead," 2012). He will testify that lead also has toxic effects on other organs (*See, e.g., id*.). At high doses, it can cause encephalopathy (swelling of the brain) that an result in death (Attached as Exhibit K, American Academy of Pediatrics, "Prevention of Childhood Lead Toxicity, 2016). At lower doses, it damages nerve cells in the brains of developing children, causing permanent, irreversible damage that can result in a variety and combination of cognitive and developmental disorders (Attached as Exhibit L, New England Jour. Of Med., "Intellectual Impairment in Children with Blood Lead Concentrations below 10 ug per

7

Deciliter," Canfield, 2003; *see also* Attached as Exhibit M, Jour. Of American Med. Assoc., "Childhood Lead Poisoning Prevention," Lanphear, 2005). Studies show that lead poisoning can cause brain damage, as evidenced by a loss of IQ points – a position that Dr. Panzivich does not dispute. (Ex. E, Dep. of Panizich at p. 89:16-25, 90:1-6) (stating she would not personally dispute Dr. Besunder's finding that there was a loss of 10 IQ points).

### A. THERE ARE NO PEER REVIEWED PUBLICATIONS ESTABLISHING THAT ACCURATE PREDICTIVE INFORMATION MAY BE DERIVED FROM APPLYING THE PEEDS-RAPEL METHODOLOGY TO DETERMINE AN INFANT/TODDLER'S LOSS OF EARNING CAPACITY

Dr. Panizich described her function in providing opinions with respect to the loss of earning capacity of individuals as:

> Q: (Generally) what you do is you attempt to determine what that individual's earning capacity was before they were injured versus after they're injured, correct?
>
> A: In general terms, yes.
>
> Q: And in the earning loss situation, essentially what you're trying to do is take what their ability was to earn before versus after, and you can subtract it and it becomes a mathematical equation at that point; correct?
>
> Mr. Benson: Object to form.
>
> A: Yes. And that can be expressed either as a dollar value or a percentage, depending upon the case venue.

(*Id*. at p. 45, line 17 – p. 46, line 5) (Ex. E).

The difficulty with children injured in infancy is determining what their functional ability would have been had they not suffered an insult. In an attempt to generate a methodology for determining a person's capability Peeds-Rapel published a proposed method in 2005 for vocational

8

experts to use in an attempt to determine an infant's loss of earning capacity. It is this method that Dr. Panizich used in all of these plaintiffs' cases.

> Q: And that's (Peeds-Rapel) the methodology that you used in this case to form some of your opinions?
>
> A: That is correct.
>
> Q: And that was published in 2005.
>
> A: Yes.

(*Id*. at p. 40, lines 3-7) (Ex. E).

The essential methodology described by Peeds-Rapel is:

> Q: So basically Peeds-Rapel is saying well, we can't get direct information, but we'll try and compare this child to how her parents did, or siblings did, and see if we can't generate what her ability would have been had she not been injured?
>
> Mr. Benson: Object to form.
>
> A: Yes.

(*Id*. at p. 49, lines 1-8) (Ex. E).

When asked to produce studies confirming that the Peeds-Rapel model would yield accurate and predictive information, Dr. Panizich was able to reference only one article, and that was a dissertation presented in a non-peer reviewed publication purporting to validate the method using injured "adult" children. (*Id. at* 43-44)(Ex. N, Job Characteristics of Adult Children Compared to Job Characteristics of their Parents: Rehabilitation Counseling Implications, April 2019). The study's limitations, as well as the science behind Peeds-Rapel to date is best expressed in the opening closing paragraph:

> A separate approach used for the vocational evaluation of a child is the PEEDS-RAPEL© Model. This model focuses on the use of parental educational levels and career patterns as the basis for establishing vocational opinions. <u>Although models can assist the vocational counselor in arriving at opinions, there is a lack of current</u>

9

<u>peer-reviewed research regarding the validity of the factors used in these types of assessments…</u>

       \*     \*     \*

<u>There is limited peer-reviewed research specific to factors involved in assessing the preinjury v. post-injury earning capacity of children in legal cases.</u> Peer-reviewed research in this area of interest will enhance the field of vocational rehabilitation, particularly when conducting forensic vocational assessments of children. The results of this study will contribute to the literature and practices of vocational rehabilitation counselors when conducting forensic vocational rehabilitation assessments of participants with limited or no work experience.

*Id.* at p. ix & 47. (Emphasis supplied)

In the fifteen years since publication, there is no published <u>peer-reviewed</u> validation that Peeds-Rapel provides accurate, reliable, predictive information. Therefore, Dr. Panizich's reliance that her reports are founded in science, is without support. Thus, her conclusions about the plaintiffs in these cases having lost no earning capacity as a result of their lead poisoning insult in infancy is without merit or scientific foundation. Her testimony should be excluded.

## IV. CONCLUSION

For reasons of the foregoing, Dr. Panizich's opinions must be excluded in full.

Dated this 8th day of June, 2020.   By: ***/s/ Fidelma L. Fitzpatrick***

                  Fidelma L. Fitzpatrick, Esq.
                  Robert J. McConnell, Esq.
                  MOTLEY RICE, LLC
                  55 Cedar Street, Suite 100
                  Providence, RI 02903
                  Telephone: (401) 457-7700
                  Facsimile: (401) 457-7708
                  ffitzpatrick@motleyrice.com
                  bmcconnell@motleyrice.com

                  Frederick C. Baker, Esq.
                  Sara O. Couch, Esq.
                  MOTLEY RICE, LLC
                  28 Bridgeside Blvd.

Mount Pleasant, SC 29464
Telephone: (843) 216-9168
Facsimile: (843) 216-9450
fbaker@motleyrice.com
scouch@motleyrice.com

Peter G. Earle, Esq.
LAW OFFICES OF PETER EARLE
839 N. Jefferson Street, Suite 300
Milwaukee, WI 53202
Telephone: (414) 276-1076
peter@earle-law.com

Victor C. Harding, Esq.
WARSHAFSKY, ROTTER, TARNOFF & BLOCH
839 N. Jefferson Street, Suite 300
Milwaukee, WI 53202
Telephone: (414) 276-4970
vich@warshafsky.com

Neil T. Leifer, Esq.
NEIL T. LEIFER, LLC
20 Marion Street, Unit 2
Brookline MA 02446
Telephone: (616) 429-4892
n.leifer@ntllaw.com

Edward A. Wallace, Esq.
Umar Sattar, Esq.
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
eaw@wexlerwallace.com
us@wexlerwallace.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MANIYA ALLEN, *et al*.,<br>Plaintiffs,<br>vs.<br>AMERICAN CYANAMID CO., et. al.<br>Defendants; | Case No.: 11-CV-0055 |
| DIJONAE TRAMMELL, *et al.,*<br>Plaintiff,<br>vs.<br>AMERICAN CYANAMID CO., et. al.<br>Defendants. | Case No.: 14-CV-1423 |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2020, a true and correct copy of the foregoing was served via ECF filing on all counsel of record.

*/s/ Fidelma L. Fitzpatrick, Esq.*