UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| D'ANGELO THOMPSON, LATONYA CANNON, TYANN MCHENRY, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN CYANAMID CO., et al., <br><br> Defendants. | Case No. 11-cv-0055 |
| DIJONAE TRAMMELL, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN CYANAMID CO., et al., <br><br> Defendants. | Case No. 14-cv-1423 |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE THE TESTIMONY OF JAMES B. BESUNDER, D.O.**

# INTRODUCTION

Nothing in Plaintiffs' opposition changes these fundamental facts regarding Dr. Besunder's opinion:

- He opines that *every* person who had the same childhood blood lead level (BLL) has lost the *same* number of IQ points;
- He reaches this conclusion based on applying the *average* lower IQs reported in a handful of population studies to all people—including Plaintiffs, thus assuming with no scientific foundation that all Plaintiffs are average;
- He does not attempt to estimate the expected IQ of a given Plaintiff absent any BLL;
- No other doctor or scientist endorses or adopts his method to diagnose individuals with a loss of a certain number of IQ points; and
- Even Dr. Besunder does not use his methodology in his own clinical practice to diagnose any individual with a loss of IQ (although he asserts that he "knows in [his] mind" that an individual has lost IQ points, without ever "put[ing] that into the medical record" or telling the parents).[1]

Although this kind of opinion is so fundamentally flawed that it should be excluded, Plaintiffs argue that Dr. Besunder should be allowed to testify in this case because, after all, he was permitted to testify in the prior *Burton* trial. But this Court's decision to permit Dr. Besunder to testify last time was based on an understanding that he would be taking the "epidemiological research he relies on . . . to make individualized analyses tailored to each child." *Burton v. American Cyanamid*, No. 07-cv-0303 (E.D. Wis. 2019), ECF No. 1119 at 9. As the record here makes clear, Dr. Besunder is not in fact doing that; he is not "tailoring" his opinions regarding IQ loss at all. Defendants respectfully urge that the Court's ruling for this trial exclude this improper testimony.

---

[1] *See* Morris Decl. (ECF No. 897), Ex. A 22:11-22; 79:18-23; 80:22-81:4.

**ARGUMENT**

**I.      DR. BESUNDER'S METHODOLOGY IS UNRELIABLE**

Plaintiffs contend that Dr. Besunder's approach to determine IQ loss is reliable because the CDC "favorably" cites to the scientific literature upon which Dr. Besunder relies, and Dr. Besunder "fully accounted for the effects of various life circumstances for these Plaintiffs," although such an analysis was not required.  Opp. at 11-12.  Plaintiffs miss the mark.

The CDC paper Plaintiffs cite does *not* endorse Dr. Besunder's use of average IQs calculated from population studies to diagnose individual people.[2]  In fact, the CDC paper notes the differences in the way individuals may be impacted by exposure to lead:  "The apparent pattern of lead-associated neurodevelopmental deficits described above suggests, *if anything*, a general dampening of intellectual functioning. This pattern is not uncommon in the general population and can be ascribed to a number of environmental causes other than lead.  *It is likely that lead, like other causes of brain injury, does not produce[] the same or similar impairments in every affected child*."  Opp., Fitzpatrick Decl. (ECF No. 941), Ex. G at 8 (emphases added). Importantly, the paper confirms that despite an "inverse association between children's BLL and IQ[,] not all children with a given BLL should be considered at equivalent neurodevelopmental risk.  In other words, a[n elevated BLL] should be viewed as a risk factor for neurodevelopmental problems, *not a diagnosis*."  *Id.* at 10 (emphasis added).  So while the paper cites to the studies used by Dr. Besunder, it does not ratify Dr. Besunder's approach whatsoever.

Dr. Besunder's approach is actually the converse of the CDC paper:  he assumes that lead *does* produce the same impairment in every affected child and concludes that every child with the same blood lead level experiences an identical IQ loss.  As explained in Defendants' Opening Brief, the scientific literature observed an <u>average</u> lower IQ in a population of children as the

---

[2] As explained in Defendants' Opening Brief, the literature upon which Dr. Besunder relies *also* does not support or endorse his methodology of using average lower IQs observed as part of a population study to diagnose individual people.  MTE at 6-7.

2

US 168057535

children's average blood lead level increased.³ An average means that some children might have experienced a lower IQ, some a higher IQ, or some exactly the average IQ. Notwithstanding, Dr. Besunder opines that the individual Plaintiffs here automatically experienced an IQ loss and quantified that loss based on the literature's average results for the tested populations of children. No other doctor has employed this methodology of using epidemiological research to diagnose IQ loss in individuals. *See* Morris Decl., Ex. A 81:14-82:3; Ex. K 178:9-179:15.

Plaintiffs contend that Defendants should be satisfied because "Dr. Besunder applied his data conservatively [since] the average IQ decrements he assigns to Plaintiffs could have been set higher." Opp. at 12. But "the average IQ decrements" should not have been "assigned" at all.⁴ Indeed, Plaintiffs' own experts do not accept Dr. Besunder's approach. MTE at 7 (referring to Drs. Trope and Lanphear). Dr. Trope's testimony on this issue is clear:

> Q. And in terms of points of IQ, in these cases I don't think I saw in your report anything along the lines of an opinion that an individual has lost X IQ points. Did you do that sort of analysis in these cases?
>
> A. No, because the -- the points of IQ in decrements are statistical based on the population of the studies, and it's not really [ ] one particular individual in the clinical sample. ***So there's no way for me to be -- to be really -- to talk about a drop in IQ quantitatively, especially since I don't have the IQ of the mothers.*** People are assuming all kind of things, but nobody has measured the IQ of the mothers, so I can't really compare number to number.

Morris Decl., Ex. M 141:3-17 (emphasis added); *see also id.* Ex. F 210:24-211:6 (Dr. Lanphear's testimony).

---

³ Contrary to Dr. Besunder's characterization, the studies do not report an IQ "loss." Defendants use the term in their brief for consistency with Dr. Besunder's opinion.

⁴ Moreover, that Dr. Besunder's estimates are supposedly conservative do not save his testimony from exclusion. *See R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 275–76 (S.D.N.Y. 2010) ("[T]he admissibility of Smith's and Hansen's testimony as to damages is not saved by . . . the fact that their estimate of damages may actually understate the true extent of damage suffered by plaintiff."); *Ayers v. Robinson*, 887 F. Supp. 1049, 1060 (N.D. Ill. 1995) ("[A] conservative opinion [ ] does not equate to a scientific one.").

3

US 168057535

Finally, Plaintiffs do not cite any support for their contention that Dr. Besunder "fully accounted" for the Plaintiffs' individual circumstances. Opp. at 11. Instead, Plaintiffs argue that Dr. Besunder's "detailed record review" is sufficient because he "considers whether there is a reason why [] the literature should not apply here." Opp. at 12. Plaintiffs' argument highlights the precise problem with Dr. Besunder's approach—it is backwards. Dr. Besunder first *assumes* Plaintiffs have an injury and then attempts to confirm his assumption by matching some risk factors in the literature to Plaintiffs' testing and/or background.

Dr. Besunder's approach is flawed, and he does not use a reliable methodology as required by *Daubert*.

## II. DR. BESUNDER IS NOT QUALIFIED TO RENDER HIS OPINIONS

"[O]ne does not necessarily become an expert on a topic simply by testifying about it in court." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 394 (D. Md. 2001). While Dr. Besunder has been permitted to testify in the past regarding whether lead exposure caused neuropsychological and behavioral impairments and IQ "loss," apart "from testifying as an expert[], he has had no professional experience" on these issues in his day-to-day practice. *Id.* Dr. Besunder opines that Plaintiffs have neuropsychological impairments as a result of lead exposure, but he neither diagnoses brain injuries in his clinical practice nor is he "called upon generally to determine the cause of neuropsychological or cognitive problems." Morris Decl., Ex. A 57:9-12. Dr. Besunder opines that the Plaintiffs lost a number of IQ points, but such a diagnosis is "not part of [his] clinical practice." *Id.* Ex. A 80:19-21; *see also* 22:23-23:10. Dr. Besunder opines that the Plaintiffs have behavioral issues as a result of lead, but Dr. Besunder has testified that he is "not a behavioral pediatrician" or "a specialist in child development and adolescent behavior." Morris Decl., Ex. A 56:11-13; 57:2-4. As Defendants discussed in their Opening Brief, Dr. Besunder's experience is limited to treating children to reduce elevated blood lead levels, MTE at 11, and thus his expert opinions should be similarly limited.

4

Plaintiffs argue that it is "irrelevant," that Dr. Besunder "has not conducted any studies of his own with respect to lead's effects on IQ, cognition, or behavior" because "the law is clear that experts are allowed to rely on the opinions of other experts in developing their own." Opp. at 9 (citations omitted). But that misses the point. Dr. Besunder is mis-applying studies and contradicting other of Plaintiffs' own experts. Thus, he does more than rely on Dr. Trope's opinions in formulating his own; he invades the field of neuropsychology. Dr. Besunder admittedly does not have the professional qualifications to conduct an IQ test or any other neuropsychological test to determine IQ. Morris Decl., Ex. A 56:19-20. Yet he seems to suggest that the actual neuropsychological professional who has said it is improper to calculate lost IQ points without, at a minimum, knowing the mother's IQ (*id.* Ex. M 141:3-17), should be ignored. Dr. Besunder's approach is to simply take some studies, use the averages found in those studies, and assume that all Plaintiffs are average. That may be good enough for Dr. Besunder, but it is not good enough for Dr. Trope (the neuropsychologist), it is not good enough for Dr. Lanphear (the medical researcher who does epidemiological studies), it is not good enough for other courts that have found such an approach to be improper, it is not good enough to meet the requirements of the Federal Rules of Evidence, and it should not be good enough here. *See* Morris Decl., Ex. M 141:3-17 (Dr. Trope's testimony); *id.* Ex. F 210:24-211:6 (Dr. Lanphear's testimony); *Palmer v. Ascaro, Inc.*, No. 03-CV-0498, 2007 WL 2298422, at *6 (N.D. Okla. Aug. 6, 2007) (Morris Decl., Ex. Q) ("While published studies have associated IQ loss with reduced IQ on a community level, these studies do not provide a reliable basis to diagnose individual children with IQ loss . . . .").

Because Dr. Besunder's expected testimony is not within the bounds of lead exposure treatment, his testimony should be excluded.

5

## **CONCLUSION**

The Court should exclude Dr. Besunder's testimony.[5]

Respectfully submitted this 20th day of July, 2020.

/s/ *Anthony S. Baish*
Daniel T. Flaherty
Anthony S. Baish
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202-5615
Telephone: (414) 273-3500
dflaherty@gklaw.com
abaish@gklaw.com

Bruce R. Kelly
William H. Voth
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
bruce.kelly@arnoldporter.com
william.voth@arnoldporter.com

Jonathan L. Stern
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: (202) 942-5000
jonathan.stern@arnoldporter.com

Sean Morris
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 243-4199
sean.morris@arnoldporter.com

***Attorneys for Defendant Atlantic Richfield Company***

Charles H. Moellenberg, Jr., Esq.
Jones Day
500 Grant Street, Suite 5400
Pittsburgh, PA 15222
(412) 391-3939 (phone)
(412) 394-7959 (fax)
chmoellenberg@jonesday.com

Jennifer B. Flannery, Esq.
Jones Day
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
(404) 521- 3939 (phone)
(404) 581-8330 (fax)
jbflannery@jonesday.com

Jeffrey K. Spoerk, Esq. (1004505)
Quarles & Brady
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5000 (phone)
(414) 271-3552 (fax)
Jeff.spoerk@quarles.com

***Attorneys for Defendant The Sherwin-Williams Company***

---

[5] Defendants also request that the Court grant its motion for excess pages. ECF No. 892. Plaintiffs did not oppose the motion. Due to an inadvertent formatting error at the time of uploading to the ECF system, Defendants' motion to exclude extended slightly over 12 pages. Defendants apologize to the Court for the formatting mistake.

Robert P. Alpert, Esq.
Jeffrey K. Douglass, Esq.
Eric A. Larson, Esq.
Morris Manning & Martin, LLP
1600 Atlanta Financial center
3343 Peachtree Road NE
Atlanta, GA 30326
(404) 233-7000 (phone)
(404) 365 9532 (fax)
rpa@mmmlaw.com
jkd@mmmlaw.com
elarson@mmmlaw.com

Timothy A. Bascom, Esq.
Bascom, Budish & Ceman, S.C.
2600 North Mayfair Road, Suite 1140
Wauwatosa, WI 53226
Tel: (414) 774-8835
Fax: (414) 476-8545
tbascom@bbclaw.com
tbascom@bbclaw.com

***Attorneys for Defendant Armstrong Containers, Inc.***

Jonathan P. Harmon
Joy C. Fuhr
Christian E. Henneke
Eric S. Fleming
Sylvia Macon Kastens
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
(804) 775-1000 (phone)
(804) 775-1061 (fax)
jharmon@mcguirewoods.com
jfuhr@mcguirewoods.com
chenneke@mcguirewoods.com
efleming@mcguirewoods.com
skastens@mcguirewoods.com

Paul E. Benson (1001457)
Lee M. Seese (1036636)
Michael Best & Friedrich LLP
790 N. Water Street, Suite 2500
Milwaukee WI 53202
(414) 271-6560 (phone)
(414) 277-0656 (fax)
pebenson@michaelbest.com
lmseese@michaelbest.com

***Attorneys for Defendant E. I. du Pont de Nemours and Company***

7

US 168057535
Case 2:11-cv-00055-LA   Filed 07/20/20   Page 8 of 9   Document 975

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2020, I electronically filed the **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF JAMES B. BESUNDER, D.O.** using the ECF system, which will send notification of such filing to all counsel of record who are registered with the Court's electronic filing system.

      /s/ Anthony S. Baish
Daniel T. Flaherty
Anthony S. Baish
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, Wisconsin 53202-5615
Telephone: (414) 273-3500
dflaherty@gklaw.com
abaish@gklaw.com