# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MANIYA ALLEN, et al.,**
                **Plaintiffs,**
      **v.**                               **Case No. 11-CV-0055**

**AMERICAN CYANAMID CO, et al.,**
                **Defendants;**

---

**DIJONAE TRAMMELL, et al.,**
                **Plaintiffs,**
      **v.**                               **Case No. 14-CV-1423**

**AMERICAN CYANAMID CO, et al.,**
                **Defendants.**

---

## <u>ORDER</u>

Plaintiffs bring these negligence and failure to warn claims against various manufacturers and sellers of white lead carbonate (WLC), alleging that they were harmed by ingesting paint containing WLC when they were children. Before me today are a number of motions in limine.

## <u>ANALYSIS</u>

I have broad discretion in ruling on evidentiary questions presented before trial in motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). A district court's power to exclude evidence in limine derives from its authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). A motion in limine should only be granted where the evidence is clearly inadmissible for any purpose. *Thomas v. Sheahan*, 514 F.Supp.2d 1083, 1087 (N.D. Ill. 2007). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that

questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993).

My rulings on the parties' motions in limine are conditional. Denial of a motion in limine does not mean that all evidence contemplated by the motion will be admitted at trial; rather denial means that, without the context of trial, I am unable to determine whether the evidence in question should be excluded. *See Id.* at 1401.

Many of the motions before me today argue both that the identified evidence is irrelevant and that, if admitted, would be unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. Unless otherwise stated, if I find the evidence is potentially relevant I will decline to rule on whether its probative value outweighs potential prejudice at this time. Those concerns may be raised as objections to specific testimony in the course of trial.

With these guidelines in mind, I turn to the motions before me.

### 1. Plaintiffs' Motions in Limine to Exclude Evidence of Crimes or Other "Bad Acts" of Plaintiffs or Plaintiffs' Family

Plaintiffs have moved to exclude evidence of crimes and misconduct of Plaintiffs and their relatives on the grounds that such evidence is irrelevant and prejudicial. Their motions include lists of specific acts that they seek to have excluded, but Plaintiffs indicate that the lists may not be all inclusive. Defendants argue in opposition that such evidence is relevant to whether Plaintiffs sustained any injury and whether that injury was caused by ingestion of WLC.

As in the first set of lead paint cases, this issue is difficult because each Plaintiff's alleged brain injury happened when the Plaintiffs were exposed to lead, but the

2

symptoms from which Plaintiffs and their experts seek to establish the existence and the extent of the injury arose well after the exposure. And while crimes or other acts by the Plaintiffs or their relatives cannot reasonably have caused the initial exposure or injury, it is plausible to draw a causal connection between that conduct and some of the symptoms that Plaintiffs cite as evidence of injury and the damages Plaintiffs claim for that injury. To some extent, the admissibility of crimes and other acts evidence will hinge on what symptoms the Plaintiff choose to put before the jury as evidence of their injuries and what adverse consequences of brain injury the Plaintiffs present in support of their claim for damages.

I will note that the risk of prejudice to the Plaintiffs associated with some of the evidence listed in their motion is very high. That means the Defendants must lay a foundation showing not just that the evidence is relevant, but that its probative value outweighs the very high risk of prejudice.

For example, an expert witness's abstract statement that a certain kind of conduct by a relative might in theory contribute to a certain kind of outcome for a child is not adequate. I will need a compelling showing that a particular Plaintiff was, in fact, affected by something one of his relatives did, and affected in a way that relates causally to a symptom or outcome that Plaintiff has raised before I allow that relative's act before the jury.

The same guidelines apply to the Plaintiffs' own behavior, but with an added nuance: some of the conduct listed in Plaintiffs' motions could conceivably do double duty as both a cause of some of the negative outcomes that Plaintiffs claim and a symptom of the underlying injury. The underlying principle remains, however, that

Defendants will need to show that the risk of prejudice is outweighed by the evidence's probative value regarding a fact issue the Plaintiff has chosen to raise. These motions are DENIED for now.

## 2. Plaintiffs' Motions in Limine to Exclude Lay Opinion

Plaintiffs seek to exclude opinions from Plaintiffs and their family members regarding health conditions and diagnoses on the grounds that they amount to expert opinions. A witness does not need to be a doctor to discuss his or her health in general terms. *See Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998). Similarly, an immediate family member's testimony about a person's health in general terms does not require medical expertise. To the extent family members observed specific symptoms or behaviors, they may testify to those facts and they may make general, non-technical inferences based on those observations.

Family members may not, however, offer opinions inferred from their own observations that amount to medical diagnoses. For this reason, the following evidence will be excluded:

- Tammie McHenry's assertion that her daughter Shaquita Williams has "mild retardation."

- Shaquita Williams' opinion as to whether Tyann McHenry had suffered an injury caused by elevated blood lead levels.

- Tyron Whigham's testimony that he does not believe that Dijonae Trammell is brain damaged.

- Bettye Trammell's testimony that she does not consider Dijonae Trammell to have cognitive issues or disabilities.

These motions are GRANTED IN PART as regards the above evidence, and DENIED IN PART otherwise. I will rule on the rest of the evidence at trial.

4

### 3. Plaintiffs' Motions in Limine to Exclude Reference to Plaintiffs' Unrelated Medical Conditions

Plaintiffs seek to exclude as irrelevant and prejudicial evidence that they may have suffered from various medical conditions on the grounds that it provides no basis for proving or disproving that the Plaintiffs were lead poisoned as children.

If Plaintiffs were only claiming damages with an immediate causal and temporal relationship to acute lead poisoning, for example costs of hospitalization and chelation therapy, then I would agree that the medical conditions they identify are irrelevant. But Plaintiffs alleged injuries are more ambiguous and expansive, including, for instance, neuropsychological defects.

Plaintiffs' burden is to prove that the WLC was a substantial factor in producing these injuries, and defendants can rebut their causation theory by presenting alternative causes of the injuries Plaintiffs claim. Evidence of medical conditions that experts have identified as possible alternative causes of Plaintiffs' claimed cognitive injuries is therefore relevant and admissible.

Although I agree that some of the conditions are prejudicial, I also recognize the substantial probative value of a central issue of fact. These motions are DENIED for now. Given the potential for prejudice, however, the Defendants should use this evidence only to the extent necessary to rebut the Plaintiffs' claims. I will also note that injuries and conditions that arose when Plaintiffs were adults are unlikely to be relevant.

### 4. Plaintiffs' Motions in Limine to Exclude Unrelated Medical Conditions of Plaintiff's Relatives

Plaintiffs seek to exclude medical conditions of their relatives as irrelevant and prejudicial. As discussed in Section 3 of this order, Defendants may attack Plaintiffs' *prima facie* case by presenting other explanations for Plaintiffs' cognitive and behavioral symptoms. Defendants have established the relevance of each of the following pieces of evidence as alternative causes of the Plaintiffs' alleged injuries and I will admit them:

- Plaintiff McHenry's and Plaintiff Tompson's mothers' tobacco and marijuana use

- Plaintiff McHenry's mother's depression

- Plaintiff Thompson's father's tobacco and marijuana use

- Plaintiff Thompson's sister's tobacco use

I will rule on the rest of the evidence at trial. These motions are DENIED.

### 5. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to Tinting of Paints

Sherwin-Williams has performed analyses of paint chips found in the homes of the plaintiffs and found that none of the paints found in those buildings match Sherwin-Williams paint formulas on file in its database. Sherwin-Williams contends that Plaintiffs should be barred from arguing that the paint in the buildings was sold by Sherwin-Williams and tinted at a later time, changing its chemical formula. It stresses that there is no evidence in the record that any of the homes had been painted with tinted paint and that juries may not base their verdicts on speculation about facts not in evidence. *Solar v. Kawasaki Motor Corps.*, U.S.A., 221 F.Supp.2d 267, 971 (E.D. Wis. 2002).

Sherwin-Williams' argument misses the mark. There is evidence in the record to indicate that Sherwin-Williams sold paints containing WLC with the intent that the paints be tinted after sale. Plaintiffs are not obliged, under the risk-contribution theory, to prove that the WLC found in the home was sold by Sherwin-Williams; rather, once Plaintiffs make their *prima facie* case, the burden shifts to the Defendants to exculpate themselves, which they may do by demonstrating their product could not have caused the injury. *Thomas ex rel. Gramling v. Mallet*, 2005 WI 129, ¶161. Sherwin-Williams may argue that the paint used was not among its premixed paint formulas, but Plaintiffs are entitled to attack that evidence as insufficient by arguing it does not exclude the possibility that tinted Sherwin-Williams paint was used. This motion is DENIED.

### 6. Defendants' Motion in Limine to Exclude Evidence of Foreign Occupational Health Regulations of Lead-Based Paint

Evidence of foreign regulation of lead-based paint is relevant to the Defendants and their predecessors' knowledge of the health risks associated with lead paint at the time they were making and selling WLC. Defendants argue that the evidence is misleading because the regulations were put in place to protect painters rather than children. The jury will be capable of navigating the distinction between hazards to painters applying lead paint and hazards to children living in homes containing lead paint. This motion is DENIED.

### 7. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to Acme White Lead, Detroit White Lead, and Martin-Senour Company

Sherwin-Williams argues that any evidence regarding Acme White Lead, Detroit White Lead, and Martin-Senour Company, all companies acquired by Sherwin-Williams,

should be excluded because there is no evidence in the record that these companies produced or marketed WLC in Milwaukee.

Again, Sherwin-Williams misunderstands the burdens under risk-contribution theory. Plaintiffs are not obligated to prove that the defendants, or their predecessors, made or sold WLC in the relevant geographical area; rather, once Plaintiffs make their *prima facie* case, the burden shifts to each defendant to prove by a preponderance of the evidence that neither it nor its predecessors made or sold WLC in the relevant market. *Thomas*, at ¶163. This motion is DENIED.

## 8. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to The Chameleon and SWP July 1904 Article Dangers of White Lead

This motion concerns an article printed in two internal Sherwin-Williams publications in the summer of 1904. The article describes a research initiative by the French government to investigate the safety of white lead paints in houses. The investigation was based on the theory that lead could vaporize after it was applied to walls, thus harming the inhabitants of the home. The scientific community established that this theory was false within a few years of the article's publication. Sherwin-Williams seeks exclusion of the evidence on the grounds that it's hearsay, irrelevant, and may confuse the jury.

Plaintiffs argue that the article should be admissible not because it is scientifically true but as evidence that Sherwin-Williams was paying attention to scientific research about white lead and that Sherin-Williams was aware of the need to investigate the safety of white lead. Those inference are reasonable, but plaintiffs have not demonstrated in any concrete way how they would advance the resolution of the issues

in this case. I will DENY this motion, but I will caution Plaintiffs that this article should not be raised without a clear showing that it is relevant and not prejudicial.

**9. Defendants' Motion in Limine to Exclude Reference to the Lead Industry**

Defendants seek to preclude Plaintiffs from referring to defendants collectively as "the lead industry." I agree that Plaintiffs will need to be careful throughout the trial in making very clear which evidence applies to which defendant or defendants, and the "lead industry" is not a concept with clear boundaries. This motion is GRANTED.

**10. Sherwin-Williams' Motion in Limine to Specifically Identify Certain Sherwin-Williams Paints Mentioned at Trial and Whether They Contained WLC**

Sherwin-Williams seeks to preclude Plaintiffs from referring generally to its "paints" and require Plaintiffs to specify the paint product to which they are referring and to note whether it contained WLC. Sherwin-Williams argues that repeated and general reference to its paints would confuse and mislead the jury and unfairly prejudice it.

I agree that general references to its paints could theoretically mislead a jury given that many of its paints contained no lead. However, general references to a brand of paints could just as easily be innocuous. This is especially true here since the trial is likely to include discussions of paint industry history as well as arguments over when and where Sherwin-Williams did business. The motion is too speculative and it is DENIED. However, I understand Sherwin-Williams concerns and will address the issue at trial should it be necessary.

**11. Defendants' Motions in Limine to Exclude Evidence or Reference to Conduct or Statements of Trade Associations Under an Agency Theory**

I ruled in the first set of lead paint cases, on the same evidence relevant to this issue, that the Lead Industries Association (LIA) and the National Paint, Varnish, and

9

Lacquer Association (NPVLA) were not agents of the defendants. That ruling stands. I will GRANT the Defendants' motions to exclude evidence offered under an agency theory. I will note, however, that Plaintiffs are free to bring evidence of LIA or NPVLA activities if it is relevant and its admissibility does not rely on a theory of agency.

## 12. Defendants' Motion in Limine to Exclude Evidence of Conduct of Other Manufacturers of WLC as against Individual Defendants

Defendants seek to exclude evidence of conduct of other WLC manufacturers as against any particular individual defendant. I agree with the principle that each defendant can be held liable only for its own conduct, and that Plaintiffs bear a significant portion of the responsibility for maintaining these distinctions. The Plaintiffs and their experts must be careful to specify which specific Defendant took part in any conduct discussed in their argument or testimony. It may be, though, that evidence of some entity's conduct (whether a defendant in the case or not) may be admissible as against another one of the defendants for purposes other than imputing conduct, and I will make those special-case rulings in the course of trial. This motion is DENIED for now.

## 13. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to Its Products Containing WLC which It Did Not Manufacture

Sherwin-Williams argues that it cannot be held liable for selling paints containing WLC if it did not, itself, manufacture the WLC. First, Sherwin-Williams argues that *Thomas* only allows liability under the risk-contribution theory for manufacturing WLC. Sherwin-Williams is mistaken. Under *Thomas*, Sherwin-Williams can be held liable for either producing or selling WLC. *See Thomas*, at ¶161.

Second, Sherwin-Williams argues that although WLC is fungible, paint is not, and it therefore cannot be found liable for selling paint. Sherwin-Williams cites to *Godoy ex rel Gramling. v. E.I. DuPont de Nemours and Co.* and *Thomas* in support of its argument. 2009 WI 78; 2005 WI 129.

These cases fail to support its argument. *Thomas* clearly allows recovery from defendants whose WLC is incorporated into a paint product before being sold to a consumer or applied to a surface. *Thomas* at ¶159. The product at issue is still WLC. Incorporating WLC into a paint product does not alter its fungibility.

*Godoy*, meanwhile, is easily distinguished because it specifically addressed defective design claims. *Godoy* at ¶24 ("This case is about defective design claims and *Thomas* was based on failure to warn claims.") In *Godoy*, the plaintiff brought a claim of defective design against producers and sellers of WLC. The Wisconsin Supreme Court held that the claim could not be maintained because the alleged defect was the presence of lead and WLC, by definition, contains lead. *Id.* at ¶2. In an attempt to salvage the claim, the plaintiff argued that the allegedly defectively designed product was residential paint pigment. *Id.* at ¶¶ 19-20. Unlike WLC, residential paint pigments were neither fungible nor identically defective, and Godoy was therefore foreclosed from proceeding under the risk-contribution theory. *Id.* The Wisconsin Supreme Court in *Godoy* did not decide, nor did it consider, whether a plaintiff could recover under a strict liability or failure to warn claim for the production or sale of WLC when the WLC had been incorporated into a different product by the time it reached the consumer. Nor is this fact surprising, as the issue had already been decided in *Thomas*. Because Sherwin-Williams can be held liable for selling a product into which WLC has been

11

incorporated, regardless of whether it manufactured or purchased the WLC, the identified evidence is relevant and this motion is DENIED.

### 14. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to its 1940 Stipulation with the FTC

Sherwin-Williams argues that its stipulation with the FTC is irrelevant because, although it describes a nationwide marketing campaign on the part of Sherwin-Williams, it does not mention WLC. It does, however, discuss the extent of Sherwin-Williams' marketing efforts at the relevant time and provides information regarding subsidiary and affiliated companies. These issues are likely to be relevant to the rebuttal of Sherwin-Williams' exculpation arguments. This motion is DENIED for now.

### 15. ARCO's Motion in Limine to Exclude Evidence of its Predecessors' Purported Conduct or Knowledge after 1946

ARCO argues that all evidence of its predecessors' behavior after 1946 should be excluded because they neither manufactured nor sold WLC in 1946. Plaintiffs argue that "DuPont was a manufacturer of WLC through 1946; after that date, it 'integrated WLC made by another company into paint and then sold that paint.'" ECF no. 634. In addition to naming the wrong defendant, Plaintiffs do not cite to the record or identify the origin of the quote they used.

Nonetheless, I will DENY this motion for now as it may be relevant if ARCO's predecessors were selling products containing WLC after 1946. However, unless Plaintiffs can make such a showing, the evidence will likely not be admissible at trial.

### 16. Sherwin-Williams' Motion in Limine to Exclude Evidence Referring to its 1969 Inter-Office Letter on the Building Research Advisory Board Meeting

Sherwin-Williams argues that an internal office letter, the publication of which post-dates the manufacture or sale of WLC by Sherwin-Williams, is irrelevant to whether

Sherwin-Williams can be held liable for the production or sale of WLC products. I agree that this evidence is not relevant to the first phase of the trial. However, the letter may be relevant to the allocation of liability in the second phase of the trial. This motion is DENIED.

### 17. Sherwin-Williams' Motion in Limine to Exclude Evidence of Constitutionally Protected Free Speech

Sherwin-Williams seeks to exclude evidence of truthful product advertisements on the grounds that these advertisements are commercial speech protected by the First Amendment and therefore cannot be a basis for liability. Plaintiffs are not arguing, however, that the advertising is the conduct that gives rise to Sherwin-Williams' liability. The advertisements will likely be probative of issues that can serve as the basis of liability, such as whether Sherwin-Williams produced and sold products containing WLC. Further, courts have held that, in failure to warn cases, a jury may consider a manufacturer's non-deceptive promotion of its product in testing the adequacy of a warning. *See Salmon v. Parke, Davis & Co.*, 520 F.2d 1359, 1363 (4th Cir. 1975).

Sherwin-Williams also argues that although Plaintiffs may say that they intend to use the advertisements only to prove elements of their claim rather than as a basis for liability, this distinction is illusory. I disagree. There is a clear distinction between the alleged conduct on which Sherwin-Williams' liability may rest (the manufacturing and selling of WLC) and the evidence used to establish the elements of the claim (advertisements tending to show what products Sherwin-Williams sold). This motion is DENIED.

13

18. **Defendants' Motion in Limine to Exclude Evidence of Alleged Disparities in the Rate of Elevated Blood Lead Levels among Minority and Low-Income Populations**

Defendants seek to exclude evidence of "any alleged disparity in the rate of elevated blood lead levels among minorities or low-income populations." They argue that general statistics have no relevance to the Plaintiffs' elevated blood levels and could unduly prejudice the jury. I agree. The elements of risk-contribution theory require evidence of an individual plaintiff's exposures and injury. Additionally, as Defendants point out, the identified evidence is based on studies which considered all sources of lead, not just WLC. This motion is GRANTED.

19. **Sherwin-Williams' Motion in Limine to Exclude Evidence Referring to the February 1927 Edition of The Chameleon**

Sherwin-Williams seeks to exclude a statement from a 1927 article in an internal publication which states formulas "have been printed upon their respective labels for years, but they haven't meant much more to the average home owner than a woman's recipe for making cake means to the average man." Sherwin-Williams argues that the article was aimed at encouraging salespeople to educate consumers about the quality of Sherwin-Williams paint and has nothing to do with whether a consumer would understand a paint to contain lead based on the label. Rather, it was meant to convey that a consumer would not understand from the formula that Sherwin-Williams used higher quality ingredients than their competition.

The evidence is probative of whether Sherwin-Williams believed an average consumer would understand from the listed formula that the paint contained toxic lead. A jury may infer that if a listed formula is unlikely to impress upon a consumer the

14

quality of the ingredients, it is similarly unlikely to impress upon them the toxicity of the ingredients.

Sherwin-Williams further argues that the evidence is unduly prejudicial because some may find the statement offensive. It is possible that some would be offended by the statement, however its probative value outweighs any prejudice. This motion is DENIED.

## 20. Sherwin-Williams' Motion in Limine to Exclude Evidence Referring to Research and Reports from Queensland, Australia

Sherwin-Williams seeks to exclude all reference to research and case reports dating to the early 1900s from Queensland, Australia regarding the danger posed by lead paint to children. Sherwin-Williams argues that the unique conditions in Queensland made lead paint significantly more dangerous there than in other parts of the world. Sherwin-Williams points to the fact that the studies did not lead United States health authorities to recommend curbing the use of lead paint, and the fact that even Queensland did not ban lead paint on verandas (where it was shown to be most dangerous), as reasons the study does not allow the inference that Sherwin-Williams knew or should have known that interior lead paint was dangerous to children.

The Queensland reports, however, are not being offered in isolation. Plaintiffs state that Rosner will testify, for instance, that the Queensland reports were a part of the relevant scientific literature under consideration by the American public health community in the early 20th Century. The relevant scientific literature, as well as inferences Rosner draws from it regarding what information Sherwin-Williams and the public knew, is probative of what Sherwin-Williams knew or should have known. It is within a historian's expertise to draw inferences about historical actors' knowledge and

15

beliefs based on evidence about the availability of information at a given historical moment in combination with contextual knowledge of that moment's general practices and mechanisms regarding information dissemination. Defendants may challenge the assumptions and facts underpinning such inferences during cross examination. This motion is DENIED.

### 21. Sherwin-Williams' Motion in Limine to Exclude Evidence Referring to its Label Instructions to Prepare Surfaces for Painting

Sherwin-Williams seeks to exclude instructions on its labels instructing consumers to prepare surfaces for painting by burning, sanding, or scraping away older paint layers. It argues that these instructions, dating to 1955 and 1939, are irrelevant because Plaintiffs do not argue, nor do they have evidence suggesting, that their elevated blood levels were the result of scraped, sanded, or burned layers of paint. Sherwin-Williams also argues that there is no evidence that any consumer ever read or followed the instructions. I agree that the instructions are not probative of how or whether Plaintiffs were exposed to lead. However, they may be relevant to other issues such as whether Sherwin-Williams provided adequate warnings. I will DENY this motion for now, and address any issues during the trial.

### 22. Defendants' Motion in Limine to Exclude Undisclosed Expert Opinions

Defendants move to exclude undisclosed expert opinions. Defendants have not identified the experts, opinions, or reports that are the target of this motion. This motion is speculative and I will not rule on it in the abstract. Accordingly, I will DENY this motion. Defendants may raise the issue again at trial if the need arises.

23. **Defendants' Motion in Limine to Exclude Evidence Regarding Plaintiff Cannon's alleged Exposure to WLC at 3030 North 21st Street**

Defendants seek to exclude evidence that Cannon was exposed to WLC at 3030 North 21st Street. Plaintiff Cannon indicates she has no intention of bringing evidence that she was exposed to WLC at 3030 North 21st Street. This motion is GRANTED.

24. **Defendants' Motion in Limine to Exclude Evidence Regarding General Population Data and Trends Regarding Elevated Blood Levels in Children and**
**Defendants' Motion in Limine to Exclude Evidence About General Population Level Data and Trends Regarding Lead-Based Paint in Housing**

Defendants seek to exclude general international, nationwide, statewide, and citywide statistics of elevated blood lead levels in children. They also seek to exclude data regarding the number of houses estimated to have lead-based paint, deteriorated lead-based paint, contaminated dust, or contaminated soil. They argue that population level data does not make it any more or less likely that these Plaintiffs' elevated blood lead levels were caused by WLC or that they lived in houses with lead-based paint. Additionally, Defendants argue some of the evidence lumps together paints containing all types of lead and so does not help a jury determing whether Plaintiffs ingested WLC.

Defendants are correct that the evidence is not relevant to causation under risk-contribution theory, which requires a showing on individualized facts. The evidence also has potential to be highly prejudicial because the data does not distinguish between WLC and other types of lead in paint and could therefore overstate the impact of WLC. However, the statistics could be relevant to certain of the defendants' affirmative defences, and may become admissible during Plaintiff's rebuttal. Additionally, population level data could be relevant to the existence or breach of the duty of care. I will consider such issues if they arise at trial. These motions are DENIED for now.

17

### 25. Sherwin-Williams' Motion in Limine to Exclude Evidence Referring to its Manufacture, Promotion, or Labeling of Paint

Sherwin-Williams seeks to exclude any evidence or references to its manufacture, sale, promotion, or labeling of paints or white lead in oil. It once again argues that, because paint is not a fungible product, it cannot be held liable under the risk-contribution theory for the manufacture or sale of paint. For the reasons discussed in Section 13 of this order, Sherwin-Williams is incorrect. This motion is DENIED.

### 26. Sherwin-Williams' Motion in Limine to Exclude Evidence Related to Its Products That Were Made after 1947

Sherwin-Williams seeks to exclude any evidence related to its products that were made after 1947 on the grounds that Plaintiffs have no evidence that any WLC containing products were applied to their houses after 1947. Under the risk-contribution theory, Plaintiffs are not obliged to produce such evidence. Rather, they need only make a *prima facie* showing that Sherwin-Williams made or sold WLC during the relevant time period: the duration of the house's existence. *Thomas*, ¶¶ 161-163. This motion is DENIED.

I note that 1947 is the year Sherwin-Williams stopped manufacturing its own WLC, though it continued to sell products incorporating WLC until 1972. To the extent this is another attempt to argue that the risk-contribution theory does not apply to the marketing of products containing WLC, it fails for the reasons discussed in Section 13 of this order.

**27. Defendants' Motion in Limine to Exclude Improper Golden Rule Arguments**

Defendants seek to exclude improper Golden Rule arguments. Plaintiffs request that any prohibition against Golden Rule arguments apply equally to both parties. This motion is GRANTED. Neither party may make improper Golden Rule arguments during the trial.

**28. Defendants' Motion in Limine to Exclude Punitive Damages Evidence**

Defendants seek to exclude evidence related to punitive damages, which are not allowed under the risk-contribution theory. Plaintiffs do not oppose this motion. This motion is GRANTED.

**29. Sherwin-Williams' Motion in Limine to Exclude Evidence Regarding Advertising, Brochures, Labels, Instructions, or Manuals Where There is No Evidence that the Document is Related to Products Offered for Sale in Milwaukee
and
Armstrong Containers' Motion in Limine to Exclude Evidence Regarding Advertisements Appearing in Publications Outside of Milwaukee**

Sherwin-Williams and Armstrong Containers seek to exclude advertisements and other documents where there is no evidence that the document was published in or was related to products sold in Milwaukee. They argue that the evidence in question is not relevant, would be unfairly prejudicial, would lead to substantial confusion of the issues, and would waste time and resources.

The evidence is relevant. In order for Plaintiffs to make their *prima facie* case under *Thomas*, they must show that the defendants made or sold products containing WLC during the relevant time period. They are not required to show the Defendants made or sold those products in Milwaukee. The advertisements, regardless of where they were circulated, are probative of whether Defendants made or sold the products

19

being advertised at the time the advertisements were circulated. That Sherwin-Williams concedes it made WLC products during the relevant time period does not change the fact that the evidence is relevant.

Sherwin-Williams argues that the documents would be unfairly prejudicial and confuse the jury, serving to "aggrandize Sherwin-Williams' role in Milwaukee using information unconnected to the city." Armstrong Containers makes a similar argument. However, the documents will not be used to show the Defendants had a presence in Milwaukee; rather they will be used to show what products the defendants offered and when. These motions are DENIED.

## 30. Defendants' Motion in Limine to Exclude Evidence Regarding Alleged Health Effects of Lead Exposure that Plaintiffs Do Not Claim

Defendants argue that evidence regarding the alleged health effects of lead exposure which Plaintiffs do not claim to have is irrelevant as such evidence would not make it any more or less probably that Plaintiffs have the injuries they do claim. I agree that testimony about the general health effects of lead exposure is not relevant to whether Plaintiffs' alleged injuries were caused by lead. However, the evidence may be relevant to duty, breach, and the timing of the Defendants' alleged knowledge. In particular, the historically known health effects of lead are likely to be relevant to when Defendants knew that WLC posed a danger. This motion is DENIED for now.

## 31. Defendants' Motion in Limine to Exclude Evidence Regarding Corporate Responsibility and Ethical Conduct

Defendants seek to exclude any evidence, testimony, or argument regarding corporate responsibility and ethical conduct. In particular, they take issue with

"idiosyncratic terms such as 'responsibility' [which] have no legal definition and invite jurors to use their own individual notions of ethics today."

I agree that opinions regarding corporate responsibility and ethics are inappropriate, but I am not inclined to ban the use of the word "responsibility" at trial. There is no requirement that parties make their arguments using only strict legal jargon, nor do I think such a requirement would be helpful to the jury. I will DENY this motion for now, but if Defendants object to specific arguments and phrasings at trial, they may raise those objections at that time.

### 32. Sherwin-Williams' Motion in Limine to Exclude Irrelevant, Hearsay Statements in the January 1936 NPVLA Minutes

Sherwin-Williams seeks to exclude an excerpt from the minutes of a January 18, 1936 meeting of the NPVLA, as well as any argument or testimony based on the document, on the grounds that the minutes contain multiple levels of hearsay and are unfairly prejudicial. The excerpt in question reads,

> President Trigg stated that Dr. Gardner, through the Scientific Section, had been urging the adoption of caution labels for the past twenty years, but that the Association had received little cooperation from members of the industry in this particular field.

Although the ancient document exception allows for the minutes themselves to be admissible, the excerpt does contain two other levels of hearsay: the record of President Trigg's statement, and President Trigg's report of Dr. Gardner's warnings. Plaintiffs have not argued that hearsay exceptions apply to each layer.

Plaintiffs do argue that the excerpt is not hearsay because they are not offering the statement for the truth of the matter. I disagree. Plaintiffs intend to use the evidence

to show that the defendants knew they had a duty to warn and chose not to fulfill that duty. The excerpt is not relevant to this issue except to the extent that it is true.

However, Plaintiffs intend to offer an opinion by their expert historian, Gerald Markowitz, that is based on the identified document. Expert witnesses may use, as the basis of an opinion, facts and data on which experts in their particular field reasonably rely, regardless of whether the facts and data are not otherwise admissible. Fed. R. Evid. 703. Meeting minutes are the kind of document on which historians reasonably rely to form their opinions, so Markowitz may give his opinion based on the minutes. Because the excerpt is otherwise hearsay, however, it is only admissible as the basis of Markowitz's testimony if its probative value in helping the jury evaluate the opinion substantially outweighs the prejudicial effect. *Id.* I find that it does. The contents of the minutes do not prejudice Sherwin-Williams any more than Markowitz's opinion based on the minutes, and the exceprt is likely to be helpful to jury in evaluating the reliability of the opinion.

If Sherwin-Williams takes issue with the facts and data underpinning Markowitz's opinions, it may raise those issues during cross-examination. I will note, however, that a challenge the sufficiency of the documents relied on by Markowitz may be an additional reason to admit the documents into evidence directly. This motion is DENIED.

### 33. Defendants' Motion in Limine to Exclude Testimony or Other References Containing Hearsay or Irrelevant and Unfairly Prejudicial Statements

Defendants seek to prevent Plaintiffs' expert Lanphear from offering testimony containing hearsay or unfairly prejudicial statements. For the most part, this motion is speculative and I will not rule on it in the abstract. However, Defendants do identify one piece of testimony offered by Lanphear in the *Burton* trial that I agree is inadmissible as

hearsay: that Lanphear's wife is able to pick out which children have been exposed to lead by interacting with them.  This motion is GRANTED IN PART as regards the identified statement and otherwise DENIED IN PART.

### 34. Defendants' Motion in Limine to Exclude Evidence Referring to an Alleged "Lead Poisoning Epidemic"

Defendants argue that evidence of a contemporary "epidemic," "lead health crisis," or "public health disaster" is of limited relevance to the issues for trial and is sufficiently prejudicial to warrant exclusion. I agree. This motion is GRANTED. Note, however, that this ruling applies only to contemporary evidence. Historical evidence probative of Defendants' knowledge at times relevant to negligence or the duty to warn remains admissible.

### 35. Sherwin-Williams' Motion in Limine to Exclude Evidence Relating to Any Failure to Warn after Passage of the Federal Hazardous Substances Act, joined by DuPont and Armstrong Containers

Sherwin-Williams argues that evidence relating to an alleged failure to warn after the passage of the Federal Hazardous Substances Act (FHSA) should be excluded because common law failure-to-warn claims were preempted by the act. In 1966, Congress added a preemption clause to the FHSA and I agree that any post-1966 evidence of a failure to warn should be excluded for that reason. However, Sherwin-Williams argues that the exclusion should extend to 1960, when the FHSA, without a preemption clause, was first enacted. Sherwin-Williams relies on a 1960 House Report indicating that the FHSA provided "nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances." The presence of the word "adequate" suggests to me that at this stage of the FHSA's evolution, Congress's intent was not to preempt state law but rather to set a minimum floor for such state regulation,

23

leaving room for states to enforce their own standards above and beyond the federal standards. Sherwin-Williams also cites to a 1966 House report, but this report post-dates the enactment of the FHSA by six years and is not persuasive. This motion is DENIED.

### 36. Sherwin-Williams' Motions in Limine to Exclude Evidence Regarding Conduct and Statements of the LIA, Certain LIA Promotional Campaigns, and LIA Meetings Sherwin-Williams Did Not Attend in Person

Sherwin-Williams argues that evidence of the conduct and statements of the LIA should be excluded because it is barred by the First Amendment. Specifically, Sherwin-Williams takes issue with evidence, testimony, and argument regarding advertisements and promotional campaigns organized by the LIA, arguing that the "only conceivable use for this evidence is to suggest Sherwin-Williams is liable for the LIA's promotional statements and conduct."

Plaintiffs, however, do not seek to hold Sherwin-Williams liable for its membership in the LIA or the LIA's promotion efforts. The First Amendment does not prohibit the use of protected speech as evidence to show elements of an otherwise valid claim. The evidence is not barred by the First Amendment and, provided the Plaintiffs can show Sherwin-Williams' membership in the LIA and the LIA's promotional efforts are relevant to an issue in this case, the evidence is admissible.

Sherwin-Williams also seeks to exclude LIA's activities in which it did not participate, arguing that it left the LIA in 1947 and that there is no evidence it received minutes from any LIA meetings it did not attend in person. Although Sherwin-Williams was not a member of the LIA after 1947, there is evidence that it actively participated in more than one of the association's promotional endeavors as a guest, offering input that

was considered and often implemented by the LIA. This type of participation is sufficient to make the advertisements and associated meetings relevant to Sherwin-Williams' knowledge and duty to warn. Plaintiffs also argue that Sherwin-Williams attended certain LIA meetings by proxy. It is not entirely clear what attending a trade association meeting by proxy in the early Twentieth Century entailed, though the Defendants' expert historian Dunlavy suggests it was similar to other corporate proxy voting of the time:

> The minutes of each LIA annual meeting listed those members who were "Present" and who were "Represented by Proxy" (i.e., did not attend in person and had formally delegated their voting power to a representative). On the history and practice of voting by proxy in corporate meetings in this era, see Leonard H. Axe, "Corporate Proxies," *Michigan Law Review* 41 (1942): 38-65 and "Corporate Proxies: II," *Michigan Law Review* 41 (1942): 225-260.

Expert Report of Colleen A. Dunlavy, Ph.D. at 219 n. 1764. Voting proxies were agents of the entity they represented, and entities attending by proxy were, "as a general rule, charged with knowledge of facts connected with the proceedings of the meeting." Leonard H. Axe, *Corporate Proxies: II*, 41 Mich. L. Rev. 229, 254 (1942). Evidence of the meetings which Sherwin-Williams attended by proxy, then, is likely relevant to what Sherwin-Williams knew. Regardless, evidence of LIA conduct and statements may be relevant to what a reasonably prudent producer or marketer of WLC should have known.

Finally, Sherwin-Williams argues that Plaintiffs' expert Markowitz should be barred from attributing the conduct of the LIA to "Defendants." I agree. Although the conduct and statements of the LIA may be relevant to issues in this case, Plaintiffs must be careful to distinguish between the actions of the LIA and the actions of the defendants. The motions in no. 11-CV-0055 at ECF no. 554 and in no. 14-CV-1423 at ECF no. 395 is GRANTED IN PART regarding attributing the conduct of the LIA to the

Defendants and DENIED IN PART regarding the First Amendment and lack of participation arguments. The motions in 11-CV-0055 at ECF nos. 559, 563, and 581 and in 14-CV-1423 at ECF nos. 398, 403, and 419 are DENIED.

### 37. DuPont, ARCO, and Sherwin-Williams' Motion in Limine to Exclude Evidence relating to comments in Plaintiffs' School Records That Elevated Blood Lead Levels Caused Their Learning Problems

Defendants seek to exclude certain comments by members of Individualized Education Program ("IEP") teams stating that elevated blood lead levels caused learning problems for Plaintiffs Cannon and Thompson. The Individuals with Disabilities Education Act requires public schools to develop an IEP for every student with a disability who meets certain requirements. 20 U.S.C. § 1414(d). The "teams" consist of professionals from a multitude of different disciplines who work collaboratively to ensure a student is receiving the proper care and instruction necessary to progress. *Id.*

Defendants argue that the teams' statements that Cannon and Thompson's learning difficulties were caused by elevated childhood blood lead levels amount to expert testimony and that no member of the teams was designated as an expert. I agree. The statements are essentially a medical diagnosis and require scientific or other specialized knowledge. It is not clear whether any member of the teams are qualified as experts, but regardless the Seventh Circuit has made clear that *all* witnesses who are to give expert testimony must be disclosed under Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004); *see also Martin v. Discount Smoke Shop, Inc.*, 443 F.Supp.2d 981, 988-90 (C.D. Ill. 2006) (holding that expert testimony included in business records requires disclosure of experts under Rule 26(a)(2)(A)).

Accordingly, this motion is GRANTED. However, I will note that the IEP reports may be admissible apart from the identified statements.

**38. Defendants' Motion in Limine to Exclude Evidence Concerning Alleged Societal Impacts or Costs Resulting from the Prevelance of Elevated Blood Lead Levels in the Population**

Defendants argue that evidence of the social impact and cost of elevated blood lead levels are irrelevant given the individualized proof requirements of this case. I agree. Additionally, as Defendants point out, the identified evidence lumps together societal impacts resulting from all sources of lead exposure and not just the WLC at issue in this case, possibly overstating the impact of WLC in a manner likely to mislead the jury. This motion is GRANTED.

**39. Defendants' Motion in Limine to Exclude Evidence Relating to Plaintiffs' Claims of Potential Future Injuries and Risks of Future Injuries**

Defendants argue that, under Wisconsin law, the Plaintiffs cannot recover for injuries they have not yet suffered, and that evidence that increased blood lead levels can lead to an increased chance of hypertension or coronary heart disease, for example, should therefore be excluded. I agree that the Plaintiffs cannot recover for injuries they have not yet suffered. *See Tietsworth v. Harley-Davidson, Inc.*, 270 Wis.2d 146, 158 (Wis. 2004). However, the general effects of increased blood lead levels may be relevant to other issues in the case, such as the Defendants' knowledge of the dangers of lead. This motion is DENIED.

**40. Defendants' Motion in Limine to Exclude Certain Opinions of Bruce Lanphear Regarding Historical Medical Literature or Knowledge**

Defendants argue that testimony by Lanphear regarding when the scientific community was aware of the danger lead paint posed to children should be excluded as

Lanphear is not a historian and is therefore not qualified to present expert testimony on these issues.

Lanphear is a medical doctor and scientist with extensive experience regarding the effects of lead on children. He is qualified to interpret the relevant medical and scientific literature, which his expert report lists as a basis of his opinions, and the fact that some portion of the medical literature dates to the early 20th century does not remove it from his expertise. Additionally, general historical background about lead poisoning and its treatments will likely be helpful to the jury in understanding and evaluating Lanphear's opinions. What Lanphear may not do, however, is draw historical, rather than medical, inferences from the available literature. Although he may testify as to the meaning and medical significance of scientific studies, including older studies, he may not, for example, infer from those studies what the general public knew at the time or what the prevailing view of the study was among the medical community at the time. The difference may prove to be a fine line, however, so I will make decisions regarding specific opinions at trial with the greater context it provides. This motion is DENIED.

**41. Defendants' Motion in Limine to Exclude Evidence Relating Defendants' Lobbying Activities**

Defendants seek to exclude evidence of their lobbying activities on the grounds that those activities are protected speech under the *Noerr-Pennington* doctrine. I agree that their lobbying activity cannot itself form the basis of civil liability, but *Noerr-Pennington* is not an absolute bar to admission of such evidence. Footnote 3 of the *Pennington* case makes clear that such evidence can be admitted if it tends reasonably to show the character and purpose of the activity. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965). If Defendants argue that the warning labels

on their products were adequate because they complied with government requirements, the jury ought to be allowed to consider evidence that the Defendants lobbied the government for permissive regulation and labelling requirements for WLC products. This evidence may also be considered by the jury in the second phase of the trial to allocate liability among the defendants. *See Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 200 (1984). This motion is DENIED.

### 42. Defendants' Motion in Limine to Exclude Certain Opinions and Testimony of Bruce Lanphear Regarding Specific Causation

Defendants seek to exclude any testimony by Lanphear regarding specific causation on the grounds that his scientific methodology was insufficient to support such claims. Specifically, Defendants take issue with Lanphear's expected testimony that Plaintiffs' childhood blood lead levels "were sufficient to result in brain injury and cognitive defects" and that "but for that lead exposure these plaintiffs would have had higher IQ scores."

Plaintiffs argue that Lanphear's testimony will be limited to general causation. Lanphear's assertion that Plaintiffs' childhood blood lead levels were sufficient to result in brain injury and cognitive defects does fall into the category of general causation and is supported by the epidemiological studies on which Lanphear relies. The other statement identified by Defendants, taken from Lanphear's deposition, reads:

> Based on epidemiological studies, more likely than not, somebody who has blood lead levels that are consistently high will have experienced IQ decrements, or to phrase it a different way, but for that lead exposure these plaintiffs would have higher IQ scores.

Although Lanphear's attempt to rephrase the statement does suggest specific causation, the testimony that a person with certain blood lead levels, more likely than

not, will have experienced IQ decrements is sufficiently supported by epidemiological studies.

Because the data relied on by Lanphear is not sufficient to support testimony of direct causation, Defendats' motion is GRANTED IN PART as regards the "but for" phrasing and DENIED IN PART as regards the other identified testimony.

### 43. Defendants' Motion in Limine to Exclude Evidence Regarding Other Lawsuits Brought Against Defendants Arising out of Alleged Exposure to WLC or Other Compounds

Defendants filed a motion to exclude reference to other lawsuits brough on behalf of people other than the Plaintiffs against manufacturers of lead pigments or paints. The first such lawsuit was filed in 1987, well after the federal government banned the use of lead compounds in paint for consumer use and after Defendants stopped making or selling WLC products for residential use. Defendants argue the evidence is therefore irrelevant to the negligence claim, which is premised on making or selling WLC, and that it is irrelevant to the failure to warn claim because there is no post-sale duty to warn. I agree. This motion is GRANTED.

### 44. Defendants' Motion in Limine to Strike Portions of the Expert Reports of Bruce Lanphear and David Jacobs

Defendants seek to exclude testimony from Lanphear regarding potential injuries from lead poisoning that the Plaintiffs are not themselves claiming. Defendants argue that because Plaintiffs represented they would only claim neuropsychological injuries, they should be barred from bringing evidence regarding other effects of lead.

Plaintiffs argue that testimony regarding the general toxicity of lead is helpful to the jury as background information and may be useful to rebut testimony from Defendants' experts who may testify regarding the danger of lead to children. The

30

testimony may also be relevant to duty of care, as it goes to foreseeable harm. Therefore, this motion is DENIED IN PART as regards Lanphear's testimony.

Defendants also seek to strike certain testimony from Jacobs, specifically his testimony that "[l]ead has no biological value in the human body and adversely affects many organ systems in both children and adults. Its neurological effects are among the most import." Defendants argue that Jacobs is not qualified to opine on lead toxicity and its effects on children. I agree. Jacobs is an industrial hygienist and not a medical expert. This motion is GRANTED IN PART as regards Jacobs' testimony.

### 45. Defendants' Motion in Limine to Exclude Evidence Related to Defendants' Coprorate Profits or Wealth

Defendants seek to exclude any reference to their profits or wealth, including assertions that they "put profits over safety." I agree that evidence of the Defendants' profits and wealth is likely not relevant to an issue in this case. However, apart from the phrase, "profits over safety," Defendants do not identify any specific evidence they wish to exclude. Additionally, some mention of the Defendants' profits could be relevant to the credibility of Defendants' explanations for their failure to warn. This motion is DENIED and I will address the admissibility of such evidence at trial.

### 46. Plaintiff Cannon's Motion in Limine to Exclude Lay Testimony

Plaintiff Cannon seeks to exclude as unqualified expert testimony her statement that she does not believe she has been told she has brain damage. She contends that the statement is essentially a medical diagnosis should therefore be excluded. I disagree. Whether Cannon has been told she has brain damage is a subject well within Cannon's own perceptions and does not require medical expertise. Whether the statement is relevant will likely depend on what arguments are developed at trial. To the

Case 2:11-cv-00055-LA   Filed 03/22/21   Page 31 of 43   Document 1063

extent Plaintiff also seeks to exclude other testimony, she has not identified specific evidence and I will not rule on the issue in the abstract. This motion is DENIED.

### 47. Armstrong Containers' Motion in Limine to Exclude Any Evidence or Reference to John R. MacGregor's Conduct and Knowledge Prior to Incorporation of MacGregor Lead Company

Armstrong Containers, the successor-in-interest to MacGregor Lead Company, seeks to exclude any evidence or reference to the knowledge or conduct of John R. MacGregor, the founder of MacGregor Lead Company, prior to its incorporation. It is true that John MacGregor's knowledge and conduct from this period cannot be imputed to Armstrong Containers. The knowledge and actions of Armstrong Container's predecessor and its agents may be attributed to Armstrong Conatiners, but John MacGregor cannot have had an agency relationship with MacGregor Lead before the company existed.

However, before the incorporation of MacGregor Lead Company, John MacGregor was an employee of Eagle-Picher Lead. Evidence of "the custom of the industry" and "the state of the art" can be relevant, under Wisconsin law, to what a reasonably prudent and informed manufacturer or seller is expected to know about the risks and harms posed by its product. *Morton v. Continental AG*, 611 N.W. 2d 659, 675-76 (2000). As an employee of Eagle-Picher Lead, John MacGregor's conduct and knowledge could therefore be relevant to whether Armstrong Containers was reasonably prudent. This motion is DENIED.

Armstrong Containers also requests that if the identified evidence is allowed, that I instruct the jury that John MacGregor's knowledge and conduct predating the

incorporation of Macgregor Lead cannot be attributed to Armstrong Containers. I will consider this instruction and determine at trial whether it is necessary.

### 48. Armstrong Containers' Motion in Limine to Exclude or Limit Evidence or Reference to Trade Associations and Other Defendants

Armstrong Containers seeks to exclude evidence of trade association activities before it joined those associations, on the grounds that it cannot be liable for the actions of others. For the same reason, it seeks to exclude references to the "lead industry" or "the defendants" collectively. I agree with the principle that each defendant must only be liable for its own conduct and not for the conduct or statements of other defendants, however evidence of trade association activities is likely relevant to what a reasonably prudent and informed manufacturer or seller should have known. I have already ruled in section 9 of this order that Plaintiffs may not refer to the Defendants collectively as the "lead industry." This motion is DENIED.

### 49. Armstrong Containers' Motion in Limine to Preclude Plaintiffs from Publishing Documents to the Jury before They Are Admitted to Evidence

Armstrong Containers seeks to preclude Plaintiffs from publishing documents to the jury before the documents are admitted into evidence. Plaintiffs argue that this motion is intended to prevent them from using impeachment material not previously disclosed in cross-examination, in defiance of Fed. R. Civ. P. 26(3)(A). This motion is DENIED, but I will note that documents should not be published to the jury before they are admitted into evidence. This does not interfere with the operation of Fed. R. Civ. P. 26(3)(A) which does not require evidence used only for impeachment purposes to be disclosed.

### 50. Armstrong Containers' Motion in Limine to Bar Misidentification of MacGregor or Other Entities as Armstrong Containers

Armstrong Containers seeks to bar Plaintiffs from referring to its predecessor-in-interest or other related companies with "Armstrong" in their names collectively or individually as "Armstrong." It also seeks to require Plaintiffs to refer to it as "Armstrong Containers" rather than simply "Armstrong" to avoid confusion. It argues that a failure to do so could confuse the jury into thinking that Armstrong Containers was actually the same company as MacGregor Lead rather than simply its successor-in-interest.

I agree that Plaintiffs should be clear about which entity they are referring to, and that referring to MacGregor as "Armstrong" could confuse the jury. The Plaintiffs have indicated that they intend to refer to Armstrong Containers as a success-in-interest at trial and that they will refer to evidence introduced against Armstrong Containers as being introduced against Armstrong Containers as the successor of MacGregor. Plaintiffs' experts should also take care to distinguish between Armstrong Containers and other related companies with "Armstrong" in their names. This should be sufficient to prevent jury confusion. I do not think it necessary to bar Plaintiffs from referring to Armstrong Containers as "Armstrong" as long as it is clear which entity they are referring to. This motion is DENIED. If Plaintiffs or their witnesses refer to the relevant entities in potentially confusing ways, I may revisit this issue.

### 51. Defendants' Motion in Limine to Exclude Evidence Regarding Plaintiff Latonya Cannon's Residence or Exposure to WLC at 2960 North 18th Street

Defendants seek to exclude evidence and argument that Plaintiff Cannon was exposed to WLC at 2960 N. 18th Street because the complaints, interrogatory answers, and most recent Plaintiff Profile Form each allege Cannon was exposed at 2962 N. 18th

Street. Because Cannon failed to disclose 2960 N. 18th Street as an exposure site, Defendants argue, it should be excluded under Fed. R. Civ. P. Rule 37(c)(1). What Defendants do not mention, and which Cannon points out, is that 2960 N. 18th Street and 2962 N. 18th Street are the same building. The two addresses comprise a duplex home and both addresses, for much of the relevant time, were occupied by Cannon's immediate or extended family. Defendants knew from depositions dating to 2008 that Cannon spent considerable time at both addresses and that the building as a whole operated as a family home.

If a party fails to provide required information, the party is not allowed to use that information at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. Rule 37(c)(1). Here, Cannon's failure was not substantially justified, but it is harmless. Defendants have been aware for more than a decade that Cannon lived at each residence and that, for a significant period of time, the duplex operated as one large family home. Moreover, both addresses were tested for lead in 2008 and it appears that the Defendants' paint chip analysis expert had access to and analyzed the samples gathered from the building by the Plaintiff. Given such analysis has already taken place, and that Defendants have already taken depositions from the people living at both addresses at the relevant times, no clear prejudice would result from including the arguments and evidence. Defendants do not argue how they would otherwise be prejudiced or state what additional discovery or investigation they would seek to conduct at 2960 N. 18th Street. This motion is DENIED.

52. **Armstrong Containers' Motion in Limine to Exclude Plaintiffs' Arguments and Speculation Related to Hypothetical Alternative Formulations of Scotch Laddie Paint**

Armstrong Containers seeks to exclude arguments and speculation related to "hypothetical alternative formulations" of Scotch Laddie Paint. Specifically, it identifies argument from the *Burton* trial in which Plaintiffs' counsel stated that Armstrong Containers' analysis of a single paint formula was insufficient to support an exculpation defense based on chemical analysis. Plaintiffs, however, have identified evidence that MacGregor Lead Company offered a variety of paints containing WLC. This is sufficient to bring the hypothetical alternative formulations beyond the realm of mere speculation. This motion is DENIED.

53. **DuPont's Motion in Limine to Admit Evidence Related to National Lead's Role in Milwaukee's White Lead-in-Oil Market**

DuPont seeks to admit evidence of National Lead's dominance of Milwaukee's White Lead-in-Oil market on the basis that it is relevant to its exculpation defense. I disagree. At issue is whether DuPont had *any* market presence in Milwaukee. Evidence that National Lead, in particular, had a large market share is not probative of the this issue. DuPont may provide evidence that retailers offered other paint brands but not DuPont, but National Lead and their market share are not relevant in the liability phase of the trial. This motion is DENIED.

54. **DuPont's Motion in Limine to Exclude Evidence of Its Production and Marketing of Paints and While Lead-in-Oil after 1924**

DuPont argues that evidence of its production and marketing of WLC products after 1924 should be excluded for three reasons: (1) Wisconsin's risk contribution theory can apply only to fungible products and paint is not fungible; (2) Plaintiffs already

obtained relief for any WLC contained in DuPont's post-1924 products when they settled with National Lead; and (3) the risk contribution doctrine applies only to pigment manufacturers.

DuPoint relies on *Godoy* for the proposition that paint is not fungible. 786 N.W.2d 674, at 682. However, Plaintiffs in this case are not alleging that paint is the defective product, as I discussed above in section 13 of this order. They are alleging that WLC is the defective product and *Thomas* makes it clear that liability can be found for producing or marketing WLC under the risk contribution theory. *See Thomas*, 285 Wis. at ¶161. I have already ruled that marketing WLC can include incorporating WLC into other products, such as paint, and then selling the final product. The WLC within the paint is still a fungible product. DuPont's first argument fails.

Dupont also argues that it cannot be held liable for selling WLC if Plaintiffs have already recovered from National Lead for producing the same WLC. DuPont does not cite any legal authority in support of this argument and it has a significant problem. The risk contribution theory plainly contemplates holding multiple defendants liable for the same injuries caused by the same WLC. This is the normal operation of the doctrine. *See Id*. Risk contritbuion theory creates a pool of defendants, each of whom "reasonably *could have* contributed *in some way* to the actual injury." *Id.* at ¶164 (*quoting Collins*, 116 Wis.2d at 191 n. 10). It would not be inconsistent to find that both National Lead and DuPont could have contributed to the Plaintiffs' injuries by, respectively, producing and marketing the same WLC. DuPont's second argument fails.

DuPont's third argument, that *Thomas* applies only to pigment manufacturers, also fails. *Thomas* extended risk contribution to a product, WLC, and then identified two

sorts of conduct relative to that product, namely producing and marketing, for which a defendant may be liable. *Id. Thomas* does not hold that liability is limited to pigment manufacturers. This motion is DENIED.

55. **Armstrong Containers' Motion in Limine to Exclude Evidence of Armstrong Paint & Varnish, Ace Hardware, Elliott Paint & Varnish and Enterprise Paint**

Armstrong Containers seeks to exclude any evidence related to four companies that sold paint containing WLC manufactured by MacGregor Lead Company, of which Armstrong Containers is the successor-in-interest. Armstrong Containers argues that the Plaintiffs have offered no evidence that paint produced by these four companies was ever sold in Milwaukee and therefore the evidence cannot be relevant. I disagree. The evidence is relevant to Plaintiffs' *prima facie* case that MacGregor Lead Company produced or marketed WLC. This motion is DENIED.

56. **Armstrong Containers' Motion in Limine to Exclude Reference to Most Popular Paints**

Armstrong Containers seeks to exclude testimony and argument that MacGregor was one of the "most popular" brands in Milwaukee for two reasons: (1) it is unfair to allow Plaintiffs to use market share data to argue MacGregor's products are popular when Armstrong Containers was excluded from using market share data in the first phase of the *Burton* trial; and (2) the specific data Plaintiffs intend to use prejudices Armstrong Containers because it gives the impression that MacGregor products were more popular than they actually were.

In the *Burton* trial, defendants were barred from using market share data to bolster an exculpation defense unless the market share data showed the defendant had no presence in the market whatsoever. The *Thomas* opinion establishes a binary inquiry

in its explanation of the exculpation defense: to exculpate itself, a defendant must prove by a preponderance of the evidence either that it did not produce or market WLC during the relevant time period or the it did not produce or market WLC in the geographical market where the house is located. *Thomas*, 2009 WI 129, ¶ 163. The extent of a defendant's presence in the market, i.e. whether it had a limited presence or whether another entity had a much greater presence, is not relevant to whether a defendant had any presence in the market. Put another way, to prove that one marketed less WLC in a given time or place than another entity is not the same as proving that one did not market WLC in that time or place.

Market share data showing that a defendant had a non-zero share of the market, on the other hand, is obviously relevant to Plaintiffs' attempts to rebut a defendant's exculpation defense. There is no logical tension or unfairness in this approach, nor is there a blanket bar on Defendants using market share data provided it shows they did not participate in the market.

Armstrong Containers also argues that the data is unfairly prejudicial because it gives the impression that its market share was greater than it actually was, and I agree Plaintiffs may not use the data to argue that MacGregor was one of the "most popular" brands in the area. Contrary to Plaintiffs' arguments, highlighting MacGregror's relative popularity is exactly the sort of comparing and contrasting of market share that must be avoided in the first phase of the trial. Because the data is nonetheless admissible to demonstrate MacGregor had a presence in the market, this motion is DENIED.

**57. Sherwin-Williams' Motion in Limine to Admit Evidence of National Lead's Role in the WLC Market**

Sherwin-Williams seeks to admit evidence of NL's role in the WLC market during the liability phase of the trial. Sherwin-Williams argues that the evidence is relevant for three reasons: (1) the market conditions that NL created are relevant to whether Sherwin-Williams' conduct was reasonable; (2) NL's dominance in the Milwaukee market and, in particular, master painters' preference for NL products is relevant to causation; and (3) NL's dominance in the Milwaukee market is relevant to Sherwin-Williams' exculpation defense.

Sherwin-Williams argues that NL's role in setting the practices of the WLC market and influencing the preferences of master painters demonstrates that its WLC sales and advertising were reasonable. Sherwin-Williams cites to *Hoida, Inc. v. M& I Midstate Bank* to support their argument. 2006 WI 69. Under *Hoida*, "what is within the duty of ordinary care depends on the circumstances under which the claimed duty arises. For example, what is comprised within ordinary care may depend on the relationship between the parties or on whether the alleged tortfeasor assumed a special role in regard to the injured party." *Id.* at ¶ 32. Generally"[i]f a person, without intending to do harm, acts, or fails to do an act, that a reasonable person would recognize as creating an unreasonably risk of injury or damage to a person or property, he or she is not exercising ordinary care under the circumstances, and is therefore negligent." *Id.* at ¶ 30.

Sherwin-Williams seems to argue that NL had created such a demand for WLC products that, under the circumstances, it was reasonable for a producer or seller of paint products to produce and sell WLC products. Although demand for certain products

may factor into whether producing and marketing the product is a reasonable business decision, it sheds no light on whether a reasonable person, under the circumstances, would recognize his or her actions as creating an unreasonable risk of injury or damage to a person or property. Nor would these circumstances alter Sherwin-Williams duty to consumers of its products or the plaintiffs. Accordingly, this portion of the motion is DENIED.

Sherwin-Williams second argument is that NL's influence over master painters is relevant to causation because their strong preference for WLC products is evidence that they would not have heeded warning labels. I held in the first set of cases that, under the common law governing these cases, Plaintiffs need not prove that reasonable warnings would have reduced the foreseeable harms associated with the product in order to prove causation, and that holding applies here for the same reasons. *Burton v. American Cyanamid Co*, 441 F.Supp.3d 705, 717 (E.D. Wis. 2020). As such, evidence as to whether a warning label would have dissuaded master painters is not relevant to causation. Accordingly, this portion of the motion is DENIED.

Finally, Sherwin-Williams argues that NL's dominance of the Milwaukee market informs their exculpation defense. Specifically, It argues evidence that NL's stores were closer to the plaintiffs' homes and that master painters overwhelmingly preferred NL paint makes Sherwin-Williams exculpation defense based on paint chip analysis more credible. I disagree. To meet its burden under the exculpation defense, Sherwin-Williams must show that the WLC used in the Plaintiffs' homes could not have been produced or marketed by Sherwin-Williams. *Burton v. American Cyanamid*, 341 F.Supp.3d 933, 938 (E.D. Wis. 2018); *See also Thomas*, 2005 WI 129, ¶ 163. The

41

evidence Sherwin-Williams identifies may make it less likely that the WLC in plaintiffs' homes was manufactured or sold by Sherwin-Williams, but it is not relevant to whether it is possible that the WLC in Plaintiffs' homes was manufactured or sold by Sherwin-Williams. Accordingly, this portion of the motion is also DENIED.

### 58. Defendants' Motion in Limine to Exclude Evidence, Testimony, and Argument regarding Jon Halverson's Paint Chip Samples Labelled 943 and 944.

Defendants seek to exclude evidence, testimony, and argument regarding two paint chip samples labelled 943 and 944 on the grounds that plaintiffs never provided the samples. Plaintiffs indicate they do not intend to introduce any evidence, testimony, or argument related to these samples. Acccordingly, this motion is GRANTED.

## CONCLUSION

**THEREFORE IT IS ORDERED** that the motions in limine in no. 11-CV-0055 at ECF nos. 465, 467, 468, 472, 474, 482, 484, 486, 488, 490, 492, 495, 500, 502, 503, 505, 507, 508, 514, 517, 586, 520, 521, 524, 525, 526, 533, 535, 538, 539, 543, 552, 559, 563, 565, 566, 567, 576, 588, 580, 581, 584, 590, 591, 593, 594, 596, 598, 599, 606, 609, 612, 614, and 824 are **DENIED.**

**IT IS FURTHER ORDERED** that the motions in limine in no. 14-CV-1423 at ECF nos. 328, 332, 334, 336, 338, 342, 346, 348, 349, 351, 353, 355, 357, 360, 363, 364, 365, 369, 372, 374, 378, 381, 383, 385, 386, 391, 398, 403, 405, 406, 411, 416, 419, 423, 425, and 584 are **DENIED.**

**IT IS FURTHER ORDERED** that the motions in limine in no. 11-CV-0055 at ECF nos. 493, 497, 509, 522, 527, 529, 549, 551, 555, 558 and 571 are **GRANTED.**

**IT IS FURTHER ORDERED** that the motions in limine in no. 14-CV-1423 at ECF nos. 340, 344, 359, 367, 370, 373, 392, 394, 400, and 410 are **GRANTED**

**IT IS FURTHER ORDERED** that the motions in limine in no. 11-CV-0055 at ECF nos. 470, 480, 547, 554, 570 and 575 are **GRANTED IN PART** and **DENIED IN PART** as explained above.

**IT IS FURTHER ORDERED** that the motions in limine in no. 14-CV-1423 at ECF nos. 330, 387, 395, 409, and 418 are **GRANTED IN PART** and **DENIED IN PART** as explained above.

Dated at Milwaukee, Wisconsin, this 22nd day of March 2021.

s/Lynn Adelman
LYNN ADELMAN
U.S. District Court Judge